UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLUEBONNET INTERNET MEDIA SERVICES, LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>PANDORA MEDIA, LLC,<br><br>  Defendant. | Case No. 21-cv-08294-VC<br><br>**ORDER GRANTING JUDGMENT ON THE PLEADINGS**<br><br>Re: Dkt. No. 111 |

Bluebonnet alleges that Pandora has infringed three of its patents, each of which describes essentially the same computer system for generating media playlists based on a user's ratings. Certain claims further describe functions for sharing the playlists with another user. For purposes of this motion, the Court accepts Bluebonnet's assertion that there are three representative claims: U.S. Patent No. 9,405,753, cl. 1; Patent No. 9,547,650, cl. 2; and Patent No. 9,779,095, cl. 72. Dkt. No. 116 at 3 n.2. These claims may capture the core of a good business idea. But they are directed to an abstract idea and lack an inventive concept—and are therefore invalid. *Alice Corp. v. CLS Bank International*, 573 U.S. 208, 217-218 (2014). Pandora's motion for judgment on the pleadings is granted. Pandora's motions for leave to file an amended answer and for summary judgment are denied as moot. Dkt. Nos. 126, 127.

**A. The claims are directed to an abstract idea.**

Abstract ideas are not patentable, because a patent on an abstract idea would monopolize the "building blocks of human ingenuity." *Alice*, 573 U.S. at 216. The category of abstract ideas includes "fundamental, long-prevalent practice[s] or . . . well-established method[s] of organizing activity." *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1286 (Fed. Cir. 2018).

It also includes the generic tailoring of products based on information known about an individual customer. *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015).

Bluebonnet's patent claims describe a system for tailoring media playlists based on a person's preferences. A "playback interface" streams media from a server to a device, where the user can enter ratings. '753 patent, cl. 1. A "rating system" stores those ratings in a database. *Id.* And a "play-list generator . . . automatically and dynamically generate[s]" playlists based on those ratings. *Id.* This system takes the abstract idea of customizing a product according to a customer's likes and dislikes and applies it to the somewhat narrower context of computer-based media playlists. Even with these limitations, the focus of the patents remains an abstract idea. Tailoring products to fit taste is a long-prevalent practice and one of the building blocks of human ingenuity that cannot itself be patented.

Implementing an abstract idea with computers does not impart patent eligibility. *Alice*, 573 U.S. at 223. Bluebonnet's assertion that the patents describe "a complex, multitiered networked system comprised of at least five networked hardware components" does not change the analysis. Opp. at 4. The recitation of "purely functional and generic" computer components does not make the focus of the claims less abstract. *Alice*, 573 U.S. at 226; *In re TLI Communications LLC Patent Litigation*, 823 F.3d 607, 613 (Fed. Cir. 2016). Here, Bluebonnet's patent claims describe a "computer platform," a "remote server," a "streaming media clips rating system," a "database management component," and a "playlist generator." '753 patent, cl. 1. Bluebonnet's expert describes these as five separate hardware components (six, if a second user is receiving a shared playlist). Almeroth Decl., Dkt. No. 106-63, at 17-18. But the claims themselves do not require more than two devices: One user device and a remote server to stream media, receive and store ratings, and generate playlists. *See* '753 patent, cl. 1. When playlists are shared, a second user's device is also required. '650 patent, cl. 2. These are functional and generic computer subsystems that merely mark out the steps of implementing the abstract idea. The term "playlist generator," for example, is just a placeholder for whatever computer software

2

or hardware performs that step. The claims apply the abstract idea in "a particular existing technological environment," which "does not render the claims any less abstract." *Affinity Labs of Texas, LLC v. DirecTV, LLC*, 838 F.3d 1253, 1259 (Fed. Cir. 2016).

Bluebonnet further argues that the claims are directed to the technological problems of "creating and generating automatic and dynamic playlists, generating personalized playlists at scale, and/or providing a simple but complete experience to access and use streaming media over the network." Opp. at 4 (quoting FAC ¶ 32). The Court agrees that the claims are directed to creating and generating playlists based on user ratings, but that is an abstract idea. The claims are not directed to generating playlists "at scale" except insofar as computerized solutions naturally scale, which is just to say that the abstract idea is implemented on a computer. Finally, the claims simply are not directed to "providing a simple but complete experience" in streaming media. If they were, that would be an abstract idea as well.

### B. The claims lack an inventive concept.

Patent claims directed to an abstract idea may nonetheless be patentable if the claims contain an "inventive concept," either individually or taken together. *Alice*, 573 U.S. at 225. The inventive concept must add "significantly more" to the abstract idea, *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. 66, 72-73 (2012), enough to "transform" it into a "patent-eligible application" of the abstract idea, *Alice*, 573 U.S. at 221.

Taken individually, the claims do not provide an inventive concept. They describe only the basic steps of streaming media, rating media, generating a playlist, and sharing a playlist. In previous litigation, the original inventors' company "acknowledged that it did not invent streaming media, playlists or media players." *Friskit, Inc. v. Real Networks, Inc.*, 306 F.App'x 610, 616 (Fed. Cir. 2009) (invalidating related patents as obvious). Taking the claims together, there is not "significantly more." Indeed, the claims as a whole simply describe, at a high level of generality, the implementation of the abstract idea. The claims do not, for example, disclose a particular technological improvement to the process of generating playlists based on ratings, which could provide an inventive concept if it were "narrowly drawn to not preempt any and all"

applications of the underlying abstract idea. *See Amdocs (Israel) Limited v. Openet Telecom, Inc.*, 841 F.3d 1288, 1301 (Fed. Cir. 2016). The claims that describe sharing a playlist are themselves directed to an abstract idea, and combining two abstract ideas does not provide patentable subject matter. *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017).

Bluebonnet argues that the novelty of the claimed system is proof of an inventive concept. It makes much of its expert's declaration that the patented system was not well-understood, routine, or conventional at the time. Opp. at 1. And Bluebonnet argues that these assertions preclude judgment on the pleadings because they present an issue of fact.

The § 101 inquiry is a question of law, though it "may contain underlying factual issues." *Accenture Global Services, GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1340-41 (Fed. Cir. 2013). As a matter of law, Bluebonnet's factual assertions do not point to a possible issue of fact that requires going beyond the claims themselves. *See Secured Mail Solutions LLC v. UniversalWilde, Inc.*, 873 F.3d 905, 912-13 (Fed. Cir. 2017) ("[T]his court has determined claims to be patent-ineligible at the motion to dismiss stage based on intrinsic evidence[.]"). If there is no legally sufficient inventive concept, it is unnecessary to decide whether that concept was well-understood, routine, or conventional. The "inventive concept" inquiry does not make the first application of an abstract idea patentable. Thus, even taking Bluebonnet's factual assertions as true, the claims contain no inventive concept that adds significantly more to the abstract idea.

Consider the "playlist generator." The complaint states that the "'playlist generator' was . . . an important part of the inventive concept," as "[m]erely sending ratings to a network system from a user's device does little to make a personalized playlist." FAC ¶ 82. "The inventors had personalization of streaming media in mind when they set out to improve upon the art." *Id.* These statements illustrate the problem with Bluebonnet's position: A particular "playlist generator" might well be patentable. But the bare claim to a "playlist generator" does not mandate a fact-intensive inquiry into what sorts of playlist generators were well-understood,

4

routine, or conventional. The result of that inquiry provides the baseline against which to measure the purported advance in the claims. But here, all that is disclosed is that the playlist generator performs "automatically and dynamically" (that is, it is run on a computer) and that it takes as input the user ratings (that is, it implements the abstract idea). '753 patent, cl. 1. Whatever playlist generators were or were not in use at the time, this claim is too general even to "arguably" embody an advance. *See Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1271 (Fed. Cir. 2016); *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019) (requiring "plausible *and specific* factual allegations that aspects of the claims are inventive" (emphasis added)). The same issue applies to the rest of the claims, individually and as a whole: They cannot support a sufficient inventive concept regardless of what was well-understood, routine, or conventional.

**IT IS SO ORDERED.**

Dated: September 7, 2022

_____
VINCE CHHABRIA
United States District Judge